UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JERRY ABNET,

    Plaintiff,

v.

UNIFAB CORPORATION,

    Defendant.

Case No. 4:05-CV-11

Hon. Richard Alan Enslen

**OPINION**

_____/

This matter is before the Court on Defendant Unifab Corporation's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. The Motion has been fully briefed and the Court discerns no reason to hear oral argument. W.D. MICH. LCIVR 7.2(d). For the reasons set forth below, the Court will grant Defendant's Motion.

**I.    BACKGROUND**

Defendant is a metal fabrication concern headquartered in Kalamazoo, Michigan. Plaintiff Jerry Abnet is a 68-year-old high school graduate (who has completed some college course work) that worked as Defendant's purchasing agent. Like virtually every industrial enterprise, Defendant's business was responsive to the often fickle demand for its product. During lean times employees were laid off, but those workers were usually called back during prosperous periods.

To secure a more competitive place in the market, Defendant wished to change the way it conducted business. Specifically, Defendant sought to obtain outside financing, become more efficient, and acquire ISO 9000 certification.[1] To that end, in 2003 Defendant hired Robert Seeley

---

[1] ISO 9000 certification is a quality control procedure designed to assure the quality and consistency of the product produced. The value of ISO 9000 certification is that certain customers will only buy from an ISO 9000 certified vendor. Defendant previously sought ISO 9000

as its general manager to effect those changes.  In January 2004, Seeley began looking to hire someone to help him bring about the type of change he hoped to engender in Defendant's enterprise.  Seeley heard through his industry contacts that Robert Payne, a 23-year-old college graduate, was looking for work in the Kalamazoo area.  Seeley was particularly interested in hiring Payne because of his degree in integrated supply chain management and knowledge of Teoriya Resheniya Izobretatelskikh Zadatch ("TRIZ").[2]

Seeley interviewed Payne and determined that he could be of value to Defendant in its endeavor to become more efficient and obtain ISO 9000 certification.  Before extending an offer of employment, Seeley required Payne to submit to a personality test.  After receiving Payne's personality test results, Defendant offered him a position.  Payne accepted the job and began work on June 1, 2004.  Payne's employment application, personality test, and payroll statements all indicate that he was hired as a purchasing agent.

During Defendant's courtship of Payne, Plaintiff was laid off on February 6, 2004.  Plaintiff was told a full-time purchasing agent was no longer needed due to decreased orders and ebbed demand.  Plaintiff's purchasing duties were distributed amongst existing employees until Payne arrived in June.

---

certification, but failed to obtain it.  Thus, by obtaining ISO 9000 certification, Defendant could now sell to customers who were previously inaccessible.

[2] According to Payne, "TRIZ is a [sic] engineering problem solving methodology that has been implemented in quality control systems.  It is a methodology that encourages 'inventive problem solving[,]' encouraging decision makers to look outside of their areas of expertise to find new ways to solve problems."  (Def.'s Br. in Supp. of Summ. J., Ex. K 6).  Seeley describes TRIZ as "a process that teaches people how to do things very, very efficiently.  And it teaches you by learning, doing it yourself, and then collectively working on it as a team."  (Seeley Dep. at 57).

Upon arrival and consistent with his mandate to help Defendant change its operations, Payne cross trained in Defendant's various departments to better understand how Defendant functioned (those departments being: accounting, assembly, engineering, purchasing, sales, and shipping and receiving). To ready Defendant for ISO 9000 certification, Payne drafted a quality policy manual and other analytical materials. Payne also implemented a process of lean manufacturing, designed to expose and eliminate waste. Finally, Payne was charged with supervising production employees, and some of his time was spent working as Defendant's purchasing agent. Defendant ultimately achieved the ISO 9000 designation under Payne's leadership.

On February 18, 2005, Plaintiff filed this lawsuit under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-34, and Michigan's Elliot-Larsen Civil Rights Act ("ELCRA"). MICH. COMP. LAWS §§ 37.2101-.2804. Plaintiff's Complaint avers that Defendant terminated him because of his age and in favor of a younger worker (Payne). In March 2005, Payne left Defendant's employ for another opportunity. After the close of business on March 9, 2005, Defendant offered Plaintiff his prior purchasing agent position, albeit on a part-time basis (25-30 per week), lasting only one month, at a rate of $15 an hour, and without healthcare benefits. Defendant gave Plaintiff until the close of business on March 10, 2005, to accept its offer.

By this time, Plaintiff had already secured employment elsewhere and declined Defendant's offer. Defendant eventually hired another one of its former employees to serve as its purchasing agent, but did not condition the employment offer in the same manner as it did to Plaintiff (*i.e.*, there was no duration limit nor any one-day acceptance window). Plaintiff then amended his Complaint to include a claim of retaliation.

## II.     LEGAL STANDARDS

Under the language of Federal Rule of Civil Procedure 56(c), summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  The initial burden is on the movant to specify the basis upon which summary judgment should be granted and to identify portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The burden then shifts to the non-movant to come forward with specific facts, supported by the evidence in the record, upon which a reasonable jury could find there to be a genuine fact issue for trial.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  If, after adequate time for discovery on material matters at issue, the non-movant fails to make a showing sufficient to establish the existence of a material disputed fact, summary judgment is appropriate. *Celotex Corp.*, 477 U.S. at 323.

Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences are jury functions.  *Fuhr v. Sch. Dist. of City of Hazel Park*, 364 F.3d 753, 759 (6th Cir. 2004); *Graham-Humphreys v. Memphis Brooks Museum of Art Inc.*, 209 F.3d 552 (6th Cir. 2000); *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994).  The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in the non-movant's favor. *Celotex Corp.*, 477 U.S. at 323 (quoting *Anderson*, 477 U.S. at 255).  The factual record presented must be interpreted in a light most favorable to the non-movant, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); however, Rule 56 limits the materials the Court may consider in deciding a motion under the rule to "pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995) (quoting FED. R. CIV. P. 56(c)). Moreover, affidavits must meet certain requirements:

> [A]ffidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.

FED. R. CIV. P. 56(e). The Sixth Circuit Court of Appeals has held "that documents submitted in support of a motion for summary judgment must satisfy the requirements of Rule 56(e); otherwise, they must be disregarded." *Logan v. Denny's Inc.*, 259 F.3d 558, 570 (6th Cir. 2001); *Moore v. Holbrook*, 2 F.3d 697, 699 (6th Cir. 1993). Thus, in resolving a Rule 56 motion, the Court will not consider unsworn or uncertified documents, *Id.*, unsworn statements, *Dole v. Elliott Travel & Tours Inc.*, 942 F.2d 962, 968-69 (6th Cir. 1991), inadmissible expert testimony, *N. Am. Specialty Ins. Co. v. Myers*, 111 F.3d 1273, 1280 (6th Cir. 1997), or hearsay evidence, *Carter v. Univ. of Toledo*, 349 F.3d 269, 274 (6th Cir. 2003); *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996); *Wiley v. United States*, 20 F.3d 222, 225-26 (6th Cir. 1994). With these principles in mind, the Court turns to Defendant's Motion.

### III.  DISCUSSION

#### A.  Age Discrimination

A case of age discrimination can be made in two different ways. Plaintiff can show age discrimination on direct evidence, *Talley v. Bravo Pinto Rest. Ltd.*, 61 F.3d 1241, 1248-49 (6th Cir. 1995); otherwise, the sufficiency of his claims are tested against the burden-shifting scheme contemplated in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). Because Plaintiff has not

shown any direct evidence of age discrimination, his claims are subject to *McDonnell Douglas* burden-shifting analysis.

Under *McDonnell Douglas*, Plaintiff must satisfy his initial burden of establishing a *prima facie* case of age discrimination. *Id.* at 802. To do so, Plaintiff must show that: (1) he was a member of a protected age class; (2) he suffered an adverse employment action; (3) he was qualified for the position he held; and (4) he was replaced by a younger worker. *Rowan v. Lockheed Martin Energy Sys. Inc.*, 360 F.3d 544, 548 (6th Cir. 2004) (citing *Cox v. Ky. Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995)). Furthermore, "in 'reduction of force' cases like this one, the fourth prong is modified so that [P]laintiff[] must provide 'additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out [P]laintiff[] for discharge for impermissible reasons.'" *Id.* (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 350 (6th Cir. 1998)).

If Plaintiff demonstrates a *prima facie* case of age discrimination, the burden then shifts to Defendant to articulate a legitimate non-discriminatory reason for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802. If Defendant advances such a reason, the burden then shifts back to Plaintiff, who must demonstrate that the reason given by Defendant was pretext and its decision was actually motivated by an unlawful bias against the aged. *Id.* at 807. The analysis is identical for Plaintiff's state law age discrimination claims under the ELCRA. *See Cicero v. Borg-Warner Auto. Inc.*, 280 F.3d 579, 584-85 (6th Cir. 2002) (citing *Lytle v. Malady*, 579 N.W.2d 906, 914-15 n.19 (Mich. 1998) (other citations omitted)).

Defendant assails Plaintiff's showing of a *prima facie* case and contends that he has not established the fourth prong; that is, Defendant maintains Plaintiff was not replaced by Payne. Upon careful review, the Court agrees.

According to the Sixth Circuit, a:

> [P]erson is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties.

*Grosjean v. First Energy Corp.*, 349 F.3d 332, 336 (6th Cir. 2003) (citing *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990)).

The Court is convinced that Plaintiff was not replaced because, although Payne functioned as a purchasing agent, he also had many other significant responsibilities. Initially after hire, Payne's primary responsibility was to assure that Defendant performed well on quality control audits and became ISO 9000 certified. When ISO 9000 audits were being performed, nearly 100% of Payne's time was devoted to that task. After the audits were completed, Payne shifted his focus away from ISO 9000 certification, dedicating only 15-20% of his time to that project. However, his efforts were still spread amongst several tasks beyond purchasing. Payne spent "[p]robably fifteen to twenty [percent of his time] on purchasing; probably ten to fifteen—or five to ten on lean production; and probably thirty percent on inventory control." (Payne Dep. 118). Furthermore, Payne was hired to implement his TRIZ training and other efficiency techniques indigenous to his education and experience. In contrast, Plaintiff's duties were limited to purchasing raw materials and managing inventory.[3] Thus, because Plaintiff's position as a full time purchasing agent was eliminated, and

---

[3] Plaintiff's affidavit claiming to have done the same duties as Payne is unsworn and cannot be considered by the Court. FED. R. CIV. P. 56(e); *Moore*, 2 F.3d at 698-99; *Logan*, 259 F.3d at 570.

no other employee was hired to perform that role exclusively, Plaintiff has failed to demonstrate that a younger employee replaced him. *Barnes*, 896 F.2d at 1465. Accordingly, Plaintiff has failed to establish a *prima facie* case of age discrimination and summary judgment against him is proper.

Plaintiff quarrels with the fact that Payne apparently was not proficient at certain portions of his job beyond purchasing and that those tasks were beyond his skill set. Plaintiff also avers that Payne did not supervise assembly employees, rather he abdicated those duties to others. Finally, Plaintiff suggests that Payne did not move into his role as a purchasing agent plus until several months after hire. Even if all this were true, those facts do little to advance Plaintiff's claims. The Court believes the duties that Defendant *hired Payne to perform*—not those that Payne actually performed—are dispositive of Plaintiff's age discrimination claims.[4] *See Id.* ("A person is *replaced only when another employee is hired* . . . to perform the *plaintiff's duties*."(emphasis added)). As noted above, Payne was hired to serve in several roles beyond purchasing agent. Simply because Payne failed to dutifully perform those tasks or did not begin those tasks immediately after hire cannot serve as a basis of age discrimination liability. No rational juror could find that Plaintiff was dismissed because of his age.[5]

---

[4] For the same reason, the fact that Payne's employment application, personality test, and payroll statements all indicate that he was hired as a purchasing agent are irrelevant. It is the duties that Payne was hired to perform that are dispositive and controls the question of whether Plaintiff was replaced.

[5] Another fact worth noting is that Defendant paid Payne more than it did Plaintiff, presumably to compensate him for his extra duties. A classic age discrimination scenario ordinarily charts a different path. That is, the usual age discriminatee is an older employee earning a high wage who is terminated in favor of a younger worker who will accept less money to perform the same tasks. This is not what happened to Plaintiff.

### B.     Retaliation

As is the case in age discrimination, in the absence of direct evidence, Plaintiff's retaliation claim is governed by the same *McDonnell Douglas* burden-shifting framework. *Weigel v. Baptist Hosp. of East Tenn.*, 302 F.3d 367, 381 (6th Cir. 2002) (citing *Christopher v. Stouder Mem'l Hosp.*, 936 F.2d 870, 877 (6th Cir. 1991)).  Because there is no direct evidence of retaliation, to make a requisite *prima facie* showing Plaintiff must demonstrate that: (1) he engaged in a protected activity; (2) which was known by Defendant; (3) Defendant took an employment action adverse against him; and (4) there was a causal connection between the protected activity and the adverse employment action.[6]  *Balmer v. HCA Inc.*, 423 F.3d 606, 613-14 (6th Cir. 2005); *see also Best v. Blount Mem'l Hosp.,* 195 F. Supp. 2d 1034, 1042 (E.D. Tenn. 2001); *Hansen v. Vanderbilt Univ.*, 961 F. Supp. 1149, 1152 (M.D. Tenn. 1997).

Defendant contends that Plaintiff cannot establish a *prima facie* case of retaliation because it did not take any adverse employment action against him, attacking the fourth prong Plaintiff is required to demonstrate.  After due consideration, the Court agrees.

Plaintiff has put forth no evidence that he ever reapplied for employment with Defendant. *See Lackey v. Jackson County Tenn.*, 104 Fed. Appx. 483,  490 (6th Cir. 2004) ("Plaintiff's insistence that Defendant Mahaney's statement in his deposition that he would not rehire Plaintiff because of Plaintiff's filing of the lawsuit is irrelevant for the purposes of this appeal because Plaintiff has not reapplied for his old position or any other employment by the county."); *Cartwright*

---

[6] The elements of a *prima facie* case of ADEA and ELCRA retaliation are the same.  *See Lilley v. BTM Corp.*, 958 F.2d 746, 755 (6th Cir. 1992) (comparing *Wentz v. Md. Cas. Co.*, 869 F.2d 1153, 1154-55 (8th Cir. 1989) with *Kocenda v. Detroit Edison Co.*, 363 N.W.2d 20, 22 (Mich. 1984)).

*v. Lockheed Martin Utility Servs. Inc.* 40 Fed. Appx. 147, 157 (6th Cir. 2002) ("no [adverse] action was taken because plaintiff was on disability leave and there is no evidence that he ever sought but was denied re-employment."); *cf. Akers v. Alvey*, 338 F.3d 491, 494 & 499 (6th Cir. 2003) (*prima facie* case found when employee reapplied); *Weigel*, 302 F.3d at 373 & 381 (same). Thus, in order for any adverse employment activity to occur, Plaintiff needed to contact Defendant seeking to be rehired (not the other way around). Furthermore, Plaintiff rejected Defendant's offer of rehire.[7] Accordingly, Plaintiff has failed to demonstrate that Defendant took an adverse employment action against him and a *prima facie* case of retaliation is wanting. Summary judgment against Plaintiff on his retaliation claim is appropriate.

## IV.  CONCLUSION

Therefore, the Court will grant Defendant Unifab Corporation's Motion for Summary Judgment and a Judgment consistent with this Opinion shall enter.

|  |  |
|---|---|
| DATED in Kalamazoo, MI:<br>          May 22, 2006 | /s/ Richard Alan Enslen<br>RICHARD ALAN ENSLEN<br>SENIOR UNITED STATES DISTRICT JUDGE |

---

[7] The Court recognizes that Defendant gave Plaintiff what he considered to be an unacceptable offer of employment. Had Plaintiff come back to Defendant with a counteroffer (presumably with more favorable terms), only then would Defendant have been poised to take an adverse employment action against Plaintiff.